IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SEARCY BUSH,

    Plaintiff,

vs.                                             CASE NO.: 4:06cv415-SPM

CITY OF TALLAHASSEE,
TALLAHASSEE POLICE DEPARTMENT,
TYLER HALL, individually,
RENNETH BEAUPIERRE, individually,
MATTHEW COPELIN, individually,
MICHAEL MALAFRONTE, individually,
GAVIN LARREMORE, individually,

    Defendants.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Combined Motion for Summary Judgment (doc. 96) filed by the City of Tallahassee and the individual officers. The parties have had the opportunity to fully brief the issues and to submit materials in accordance with Northern District of Florida Local Rules 56 and 7.1. The motion is ready for review.

    **I.**    **Events of June 4, 2004**

On June 4, 2004, at around 6:30 or 7:00 p.m., Searcy Bush's wife dropped him off at the Campus Point Apartments. Mr. Bush went to Apartment 17 to talk

to a man named Bryan about buying a dog. As Mr. Bush was leaving Bryan's apartment and walking toward the parking lot, Eddie Walker, whom Mr. Bush did not know began walking next to him. As they proceeded through the parking lot, Officer Renneth Beaupierre of the Tallahassee Police Department came toward Mr. Bush and asked for his name.

      Mr. Bush asked Officer Beaupierre why he wanted to know his name. Officer Beaupierre responded that he just wanted to know. He then asked Mr. Bush what he was doing at the apartment complex. Mr. Bush said that he was visiting people and pointed to a couple who was by then sitting on a blue Chevy. Mr. Bush asked Officer Beaupierre if he was a suspect. Officer Beaupierre said no.

      Mr. Bush asked Officer Beaupierre why he wanted to talk if Mr. Bush was not a suspect. Officer Beaupierre stated that he just wanted to talk. Mr. Bush told Officer Beaupierre that he did not want to talk, that he knew his rights, and that he was not required to talk because he was not a suspect. At some point, Officer Tyler Hall joined in the conversation. Officer Hall was sitting on some steps and talking to Eddie Taylor. Earlier in the day, Officer Beaupierre issued a trespass warning to Eddie Taylor for a trailer park adjacent to the Campus Point Apartments.

      Officer Beaupierre began walking toward Mr. Bush and told Mr. Bush to come over because Officer Beaupierre needed to talk to him. Mr. Bush walked

away from Officer Beaupierre and said he was not required to talk and that he did not want to talk.

Officer Beaupierre directed Mr. Bush to put his hands behind his back. Mr. Bush raised his hands in the air like he was being arrested. With his hands in the air, Mr. Bush asked Officer Beaupierre if he was under arrested and he protested that he had done nothing. Officer Beaupierre explained to Mr. Bush that he was not being arrested, but that he was being detained. When Mr. Bush asked Officer Beaupierre for the reason, Officer Beaupierre told him to stop resisting arrest. Mr. Bush said he was not resisting, he was only asking a question.

Officers Beaupierre and Hall then grabbed Mr. Bush and slammed him against a gate. Each officer held one of Mr. Bush's arms behind Mr. Bush's back. After Mr. Bush hit the gate, the officers pulled Mr. Bush back, then lifted him and slammed him face first onto the concrete. Mr. Bush sustained a head injury.

When he was taken to the ground, Officer Beaupierre went to the ground with Mr. Bush. Mr. Bush was on his side with one hand in front of him and one arm behind his back. Officer Beaupierre placed a handcuff on one of Mr. Bush's arms. One officer had his knee on Mr. Bush's neck.

The officers told Mr. Bush to put his hands behind his back, but Mr. Bush could not do so because Officer Beaupierre was on top of him. Mr. Bush was on

his back spinning on the ground.  Officer Beaupierre put his elbow at Mr. Bush's throat and spread his legs to brace himself.

Officer Hall extended his baton and began beating Mr. Bush's legs.  He yelled at Mr. Bush to roll over and to turn on his stomach and to do it now.  Officer Hall beat Bush with the Baton at least 15 times.  Mr. Bush was unable to roll over because Officer Beaupierre was on top of him, choking Mr. Bush with his elbow.  Mr. Bush was not struggling.  He was not flailing his arms.  He was not moving his legs back and forth while he was being hit with the baton.

A crowd of 20 to 25 people gathered.  They told the officers to stop hurting Mr. Bush.  Within minutes Officer Matthew Copelin arrived.  He ran from his car with his baton in hand and began beating Mr. Bush.  Officer Copelin hit Mr. Bush 9 or 10 times.  By this point, Officer Beaupierre had gotten off of Mr. Bush.  Mr. Bush rolled over on his stomach.  He used one hand to protect his legs, but he was hit on the wrist by a baton.

Officer Michael Malafronte arrived soon thereafter.  Mr. Bush was on his stomach, slightly to his side.  Officer Malafronte ran up to Mr. Bush and sprayed him with mace or pepper spray.  Officer Malafronte then kicked Mr. Bush 3 or 4 times on the side or thigh.

Mr. Bush was crying out in pain and moaning.  He was crawling on his knees trying to wipe the pepper spray from his eyes.  Officer Copelin threatened the gathering crowd with arrest for obstruction of justice.

Officer Gavin Larremore arrived next.  He did not talk to the other officers.  He ran to Mr. Bush and hit him with a Taser.  After he was Tased, Mr. Bush was laying on the ground on his stomach, praying, unable to move.  Officer Larramore shot Mr. Bush with the Taser again.

Mr. Bush could not move.  He was carried to a police car with his feet dragging.  Four officers picked up Mr. Bush and threw him inside.

The officers took Mr. Bush to the Tallahassee Memorial Hospital for medical attention.  The hospital released Mr. Bush without any testing.  Later at the Internal Affairs Unit of the Tallahassee Police Department, Mr. Bush turned white and collapsed.  He crawled out of the Internal Affairs Unit and was taken back to the hospital after he passed out.  He received treatment at the hospital.

As a result of the beating he suffered, Mr. Bush has a large bump protruding from the middle of his forehead.  He has an injury to his knee, which causes him to limp and restricts him from running.  He has an injury to his left wrist, which is painful to touch.  Mr. Bush suffered burns and sores on his back from the Taser.

The Tallahassee Police Department charged Mr. Bush with (1) loitering and prowling, (2) resisting arrest without violence, and (3) possession of narcotics equipment.  He pleaded no contest to loitering and prowling in exchange for a sentence of two days time served.

**II.     Lawsuit**

Mr. Bush filed this suit against the City of Tallahassee and the individual officers.  Count I alleges a claim for battery against the City of Tallahassee.  Count II alleges a claim for battery against the individual officers.  Count III alleges a claim under 42 U.S.C. § 1983 against the individual officers for use of excessive force.  Count IV alleges a claim for intentional infliction of emotional distress against the individual officers.  Count V alleges a claim for negligence against the City of Tallahassee.

**III.    Defendants' Motion for Summary Judgment**

Defendants' arguments on summary judgment suffer from a common problem.  On summary judgment, the facts must be taken in the light most favorable to the plaintiff.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The same is true when assessing a claim of qualified immunity.  Johnson v. Jones, 515 U.S. 304, 311 (1995); Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).  It is not appropriate to rely on a different version of facts proposed by Defendants.  Id.

**A.     Battery**

Under Florida law, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force was reasonable under the circumstances."  City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).  "Determining whether the force used to effect a particular seizure is

reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Lee, 284 F.3d at 1197. The United States Supreme Court in Graham v. Connor, 490 U.S. 386 (1989), directed courts to consider several factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham 490 U.S. at 396.

Applying this standard against the facts presented by Mr. Bush, the officers used excessive force. The crime of loitering and prowling is relatively minor. Mr. Bush did not pose an immediate threat to the safety of the officers. He was complying with the officers instructions when he could. He was not resisting arrest.

A reasonable jury could find for Mr. Bush on his battery claims. Accordingly, summary judgment as to these claims will be denied.

    **B.    Excessive Force**

For the same reasons stated for Mr. Bush's battery claims, summary judgment should also be denied on the excessive force claims. "[Q]ualified immunity is not appropriate when the Graham analysis yields an answer that is clear beyond all doubt."

In this case, Mr. Bush has evidence to show that he was not resisting the

Case No.: 4:06cv415-SPM

officers. Nevertheless, he was choked, beaten with batons, maced, kicked, and tased. Plaintiff states that he was not struggling and did not pose a threat to the officers. Assuming Mr. Bush's facts are true, the force used against Mr. Bush was clearly excessive. The individual officers are not entitled to summary judgment on qualified immunity grounds.

### C. Intentional Infliction of Emotional Distress

Conduct involving the abuse of power, like the conduct alleged of the officers in this case, can be extreme and outrageous to support a claim of intentional infliction of emotional distress. See Lashley v. Bowman, 561 So. 2d 406, 409-10 (Fla. 5th DCA 1990); Carter v. District of Columbia, 795 F.2d 116, 139 (D.C. Cir. 1986); Enright v. Groves, 560 P.2d 851, 854 (Colo. Ct. App. 1977). As explained in comment e to the Restatement (Second) of Torts, Section 46, "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatement (Second) of Torts, § 46 comment e (1965). "In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position." Id.

The facts of this case, taken in the light most favorable to Mr. Bush, are sufficient to support a finding of intentional infliction of emotional distress. The facts demonstrate an extreme abuse of position. Accordingly, summary

Case No.: 4:06cv415-SPM

judgment on this ground will be denied.

**D.    Negligence**

Mr. Bush alleges that the City of Tallahassee breached its duty of care "to protect [him] from the injuries caused by the individually named Defendants . . . ." Second Amended Complaint, Doc. 53,  ¶ 45.  Mr. Bush does not allege any acts of negligence aside from the officers' excessive use of force.  The claim, while cognizable as a battery, is not cognizable under Florida law under a negligence theory against the individual officers or vicariously against the City of Tallahassee.  City of Miami v. Sanders, 672 So.2d 46, 48 (Fla. 3d DCA 1996). Accordingly, Mr. Bush does not have a valid negligence claim.  Summary judgment will be granted to the City of Tallahassee on this ground.

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Combined Motion for Summary Judgment (doc. 96) is granted as to Count V, and denied as to all other Counts.

DONE AND ORDERED this 9th day of October, 2007.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge